BOLIN, Justice.
Dr. Gerald Hodge and Tombigbee Healthcare Authority d/b/a Bryan W. Whitfield Memorial Hospital separately petition this Court for a writ of mandamus directing the Marengo Circuit Court to dismiss the claims asserted against them by Gertha R. Tucker and David Tucker, Jr., individually and as the administrator ad litem for Gertha Tucker’s estate, based on the applicable statute of limitations.

Factual and Procedural History

Gertha Tucker underwent a hysterectomy in 2006. The hysterectomy was performed, by Dr. Gerald Hodge at Bryan W. Whitfield Memorial Hospital. On December 28, 2011, Gertha was seen by a rheu-matologist upon her complaints of bilateral thigh pain. An X-ray revealed the presence of a surgical hemostat clamp lodged in Gertha’s peritoneal cavity. On February 8, 2012, Gertha underwent a surgical procedure to remove the retained hemostat clamp from her abdomen. Gertha *736 also had her appendix removed at that time.
On March 5, 2012, Gertha sued Dr. Hodge, Tombigbee Healthcare Authority d/b/a Bryan W. Whitfield Memorial Hospital (hereinafter referred to collectively as “the defendants”), and others, alleging claims under the Alabama Medical Liability Act, § 6-5-480 et seq. and § 6-5-540 et seq., Ala.Code 1975. In count I of the complaint, Gertha specifically alleged that Dr. Hodge performed a hysterectomy on her in 2005;[1] that Dr. Hodge negligently failed to account for and to remove from her body a surgical hemostat clamp; that she did not discover the presence of the foreign object until December 2011, when she first started experiencing pain; and that as the proximate result of the negligent failure to remove the hemostat claim, she was made to suffer pain; life-threatening medical problems, including severe infections, and mental anguish.
In count II of the complaint, Gertha alleged that the defendants failed to properly manage, train, or supervise their surgical team, which, she says, directly resulted in the hemostat clamp being retained in her body and causing her injuries.
In count III of the complaint, Gertha asserted claims against Dr. Judy Travis and Dr. Ronnie Chu alleging a failure to diagnose; a failure to treat and to make a timely referral for treatment; a failure to disclose; and fraudulent suppression, which, she says, caused her condition to deteriorate resulting in her life-threatening medical problems including sepsis, infection, blood clots, possible stroke, and the removal of her appendix. On March 19, 2012, Gertha amended her complaint to add, as a plaintiff, her husband David, who asserted a claim for loss of consortium.
On March 22, 2012, Dr. Hodge moved the trial court to dismiss the amended complaint against him pursuant to Rule 12(b)(6), Ala. R. Civ. P., arguing that it was barred by the applicable statute of limitations set forth in § 6-5-482, Ala. Code 1975. On April 8, 2012, Tombigbee Healthcare answered and also moved the trial court to dismiss the amended complaint against it pursuant to Rule 12(b)(6), Ala. R. Civ. P., arguing that it was barred by the applicable statute of limitations set forth in § 6-5-482, Ala.Code 1975. Section 6-5-482(a) provides:
“(a) All actions against physicians, surgeons, dentists, medical institutions, or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act; except, that an error, mistake, act, omission, or failure to cure giving rise to a claim which occurred before September 23, 1975, *737 shall not in any event be barred until the expiration of one year from such date.”
(Emphasis added.) The defendants argued that Gertha’s injury occurred and her cause of action accrued at the time of the act or omission complained of whether or not the injury was or could have been discovered within the statutory period. See Jones v. McDonald, 631 So.2d 869 (Ala.1993) (holding that plaintiffs medical-malpractice action accrued when physician performed the surgery and left the surgical instrument in the body at the surgical site); Street v. City of Anniston, 381 So.2d 26 (Ala.1980) (holding that in medical-malpractice actions the legal injury occurs at the time of the negligent act or omission, whether or not the injury is or could be discovered within the statutory period); and Bowlin Horn v. Citizens Hosp., 425 So.2d 1065 (Ala.1982). The defendants argued that the injury complained of occurred in 2005, when Gertha underwent the hysterectomy, and that her complaint filed in 2012 is barred by the four-year period of repose set forth in § 6-5-482(a).
On July 28, 2012, the Tuckers filed a response in opposition to the defendants’ motions to dismiss. Citing Crosslin v. Health Care Authority of Huntsville, 5 So.3d 1193 (Ala.2008), and Mobile Infirmary v. Delchamps, 642 So.2d 954 (Ala.1994), the Tuckers argued that Gertha’s legal injury occurred in December 2011, when she . first began experiencing pain in her abdomen and discovered the presence of the hemostat clamp. See Crosslin, 5 So.3d at 1196 (stating that “ ‘[w]hen the wrongful act or omission and the resulting legal injury do not occur simultaneously, the cause of action accrues and the limitations period of § 6-5-482 commences when the legal injury occurs’ ” (quoting Mobile Infirmary, 642 So.2d at 958)). Thus, the Tuckers contend that the complaint filed in March 2012 was not barred by the statute of limitations found in § 6-5-482.
Gertha passed away on April 8, 2012. On July 25, 2012, David was substituted by order as the administrator ad litem and personal representative of Gertha’s estate.[2] On August 2, 2012, the trial court entered an order denying Tombigbee Healthcare’s motion to dismiss the amended complaint. The trial court’s order contained no express disposition of Dr. Hodge’s motion to dismiss.
On August 6, 2012, David, as the personal representative of Gertha’s estate, filed a second amended complaint in order to assert a wrongful-death claim against the defendants.[3] David alleged that as the result of the defendants’ actions Gertha suffered injuries, including abdominal abscesses, sepsis, stroke, and pulmonary thromboembolism, which caused her death on April 8, 2012.
On August 9, 2012, Tombigbee Healthcare moved to dismiss the second amended complaint, arguing that any claims relating to the surgical procedure performed in 2006 were barred by the four-year period of repose set forth in § 6-5-482. Also on August 9, 2012, Tombigbee Healthcare moved the trial court for a partial summary judgment as to all claims asserted against it. Tombigbee Healthcare argued that Gertha’s cause of action accrued in 2006, the date of the act complained of, i.e., the hysterectomy, and that her cause of *738 action filed in March 2012 was filed well beyond the absolute bar of the four-year period of repose found in § 6-5-482(a). Citing Hall v. Chi 782 So.2d 218 (Ala.2000), Tombigbee Healthcare further argued that because Gertha did not have a viable medical-malpractice claim at the time of her death — because that claim was barred by the four-year period of repose— her estate could not maintain a wrongful-death action because such an action would also be untimely as it relates to the complained of hysterectomy performed in 2006. See Hall, 782 So.2d at 221 (“If the decedent had a viable medical-malpractice claim when he died, then the decedent’s personal representative could, within two years after the decedent’s death, bring a wrongful-death action alleging medical malpractice.”).
On August 10, 2012, Dr. Hodge moved the trial court to dismiss the second amended complaint, echoing Tombigbee Healthcare’s argument that Gertha’s estate could not maintain a wrongful-death claim without the existence of a viable medical-malpractice claim at the time of her death.
On September 27, 2012, David, individually and in his representative capacity, filed a response in opposition to the defendants’ motions, arguing that the trial court had, by its order of August 2, 2012, denying Tombigbee Healthcare’s initial motion to dismiss, determined that Gertha had a viable medical-malpractice claim at the time of her death on April 8, 2012. David contended that the wrongful-death claim was governed by the applicable two-year statute of limitations found in § 6-5-410, Ala.Code 1975, and not by the provisions of § 6-5-482. Thus, David argued that the wrongful-death claim asserted on August 6, 2012, was timely because it was brought within the two-year limitations period set forth in § 6-5-410.
On January 28, 2013, Dr. Hodge supplemented his motion to dismiss with the affidavits of Dr. Jerry Luther and Dr. Judy Travis, which indicate that the hemostat clamp was discovered in Gertha’s abdomen by a CT scan as early as March 5, 2008; that Gertha was made aware of the discovery of the hemostat clamp in her abdomen; that Gertha refused surgery to remove the clamp; and that Gertha chose not to share the discovery of the clamp with her family because she said they would “make” her have the surgery to remove the clamp.
On January 29, 2013, David filed a response in opposition to the defendants’ motions along with evidentiary material in support of the response in opposition. Following a hearing, the trial court on July 1, 2013, entered an order denying Dr. Hodge’s motion to dismiss and Tombigbee Healthcare’s motion for a partial summary judgment.
Dr. Hodge petitions this Court for a writ of mandamus directing the trial court to grant his motion to dismiss and to dismiss all the claims asserted against him based on the applicable statute of limitations. Tombigbee Healthcare petitions this Court for a writ of mandamus directing the trial court to grant its motion for a partial summary judgment as to all claims asserted against it based on the applicable statute of limitations. The two petitions were consolidated for the purpose of writing one opinion.

Standard of Review

A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: “‘(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’” Ex parte Nall, 879 *739 So.2d 541, 543 (Ala.2003) (quoting Ex parte BOC Grp., Inc., 823 So.2d 1270, 1272 (Ala.2001)).

Discussion

The defendants contend that Gertha’s medical-malpractice action was absolutely barred at the time of her death by the four-year period of repose set forth in § 6-5-482(a). Because, they say, Gertha did not have a viable medical-malpractice claim at the time of her death, David could not maintain the wrongful-death action against them, as that claim was also considered to be time-barred. Thus, they argue that they are entitled to a writ of mandamus directing the trial court to dispose of the claims against them.
David argues that the petitions are due to be denied because, he argues, the defendants have failed to establish a clear legal right to the relief sought in that they have failed to demonstrate that the medical-malpractice and wrongful-death claims were barred by § 6-5-482(a). Further, David argues that the petitions are due to be denied because the defendants have failed to exhaust all other remedies available to them; specifically, David argues that they have failed to seek certification for a permissive appeal pursuant to Rule 5, Ala. R.App. P.
Initially, we note that Dr. Hodge supplemented his August 10, 2012, Rule 12(b)(6) motion to dismiss with the affidavits of Dr. Luther and Dr. Travis. Rule 12(b), Ala. R. Civ. P., provides, in pertinent part:
“If, on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.”
The trial court did not expressly.exclude Dr. Luther’s and Dr. Travis’s affidavits. Therefore, Dr. Hodge’s support of his motion to dismiss with the affidavits of Dr. Luther and Dr. Travis effectively converted his motion to dismiss to a summary-judgment motion. Thus, both Dr. Hodge and Tombigbee Healthcare petition this Court for a writ of mandamus challenging the denial of a motion for a summary judgment.

1. Clear Legal Right to Relief

In support of their petitions for a writ of mandamus, the defendants reiterate their arguments from the trial court. They argue that Gertha’s legal injury occurred— and her medical-malpractice cause of action accrued — in 2006, at the time of the act or omission complained of, i.e., the hysterectomy, whether the injury was or could have been discovered by Gertha within the statutory limitations period. They state that it is immaterial whether Gertha did not actually become aware of the presence of the hemostat clamp in her body until December 2011. Thus, they conclude that the medical-malpractice action filed in March 2012 is absolutely barred by the four-year period of repose set forth in § 6-5-482(a). Further, the defendants argue that because Gertha did not have a viable medical-malpractice claim at the time of her death — because that claim was barred by the four-year period of repose — her estate could not maintain a wrongful-death action; that action would also be untimely because it relates to the complained of hysterectomy in 2006.
In support of their position, the defendants rely on Jones v. McDonald, supra. In Jones, the plaintiff underwent eye sur *740 gery in April 1987 to alleviate a condition known as acute dacryocystitis, a condition caused by an infection in the tear sac and tear duct. In September 1988, the plaintiff began experiencing tenderness and infection in the area of the 1987 surgical site. In December 1988, the plaintiff underwent a second surgery performed by a different ophthalmologist. During the second surgery, a piece of gauze was discovered embedded in the tear sac on which the first surgery had been performed. It was determined that the gauze was the cause of the plaintiffs post-surgery infection. In March 1990, the plaintiff sued the original ophthalmologist alleging medical malpractice. The defendant filed a motion to dismiss and a motion for a summary judgment, arguing that the claim was barred by the statute of limitations set forth in § 6-5-482(a). The trial court denied those motions, and the case proceeded to trial. After the jury returned a verdict in favor of the plaintiff, the defendant appealed to this Court. In determining that the plaintiffs cause of action was barred by § 6-5-482(a), this Court stated that the plaintiffs cause of action accrued on the date the ophthalmologist performed the initial surgery and left the gauze at the surgical site. Id.
In Jones, this Court relied on the decision in Grabert v. Lightfoot, 571 So.2d 293 (Ala.1990). In Grabert, the plaintiff was referred to a surgeon to repair a hernia. On May 1, 1987, the physician performed the surgery but was unable to locate the hernia. The plaintiff was forced to undergo a second surgery performed by a different surgeon in order to repair the hernia. The second surgeon was able to locate and repair the hernia; however, the second surgery left the plaintiff impotent and also unable to work.
On May 12, 1989, the plaintiff sued the surgeon who performed the first surgery, alleging medical malpractice. The surgeon moved the trial court for a summary judgment, asserting the two-year statute of limitations found in § 6-5-482(a). The trial court granted the motion for a summary judgment, and the plaintiff appealed. In affirming the summary judgment in favor of the surgeon, this Court stated:
“As this Court stated in Garrett v. Raytheon Co., 368 So.2d 516, 518-19 (Ala.1979):[4]
“‘The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action “accrues.” The cause of action “accrues” as soon as the party in whose favor it arises is entitled to maintain an action thereon.’
“In Street v. City of Anniston, 381 So.2d 26, 31 (Ala.1980), this Court said:
“ ‘Code 1975, ■ § 6-5-482(a), is similarly titled “a statute of limitations,” and commences the running of the statute from the time of the act or omission giving rise to the cause of action. It does not, however, act as a grant of immunity; our case law has established that, in malpractice actions, legal injury occurs at the time of the negligent act or omission, whether or not the injury is or could be discovered within the statutory period. Garrett v. Raytheon, [368 So.2d 516], Hudson v. Moore, 239 Ala. 130, 194 So. 147 (1940), Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972).’
*741 “Certainly, [the plaintiff] was entitled to maintain an action against [the surgeon] immediately after the May 1,1987, operation, despite the fact that the extent of [the plaintiffs] injuries allegedly caused by [the surgeon’s] failure to find or to remedy the hernia'may not have been fully known then.”
Grabert, 571 So.2d at 294.
Relying on the decisions in Crosslin, supra, and Delchamps, supra, David argues that Gertha’s legal injury did not occur — and her medical-malpractice cause of action thus did not accrue — until December 2011, when she first began experiencing pain in her abdomen and discovered the presence of the hemostat clamp. Thus, he contends that the medical-malpractice action filed in March 2012 is timely and is not barred by § 6-5-482(a). Because, he argues, Gertha had a viable medical-malpractice claim at the time of her death, the wrongful-death claim filed within two years of Gertha’s death was timely under § 6-5-410.
In Crosslin, the plaintiff was seen on February 23, 2002, at the emergency room at Huntsville Hospital complaining of nausea, dizziness, and weakness. The physician evaluated the plaintiff and ordered diagnostic tests. A radiologist reviewed the images produced by a CT scan and issued a preliminary radiology report indicating the presence of a tumor on the plaintiffs pituitary gland. Subsequently, the physician spoke with the plaintiff concerning his condition but failed to inform him of the findings of the preliminary radiology report indicating the presence of a pituitary tumor. There was no allegation that the symptoms from which the plaintiff suffered on February 23, 2002, were related to the pituitary tumor. The plaintiff was discharged from Huntsville Hospital.
On September 1, 2005, the plaintiff returned to Huntsville Hospital complaining of a loss of vision in his left eye and decreased vision in his right eye. A CT scan of the plaintiffs head again indicated the presence of the pituitary tumor that had been previously identified. It was on this date that the plaintiff first learned of the pituitary tumor, and he alleges that he was unaware before this date of any facts that would have reasonably led to the discovery of the tumor.
On September 3, 2005, surgery was performed on the plaintiff to remove the tumor. Following the surgery, the plaintiffs vision did not improve, and he suffered from blindness and/or severely limited vision in both eyes.
On February 24, 2006, the plaintiff sued the physician and Huntsville Hospital asserting a medical-malpractice claim and alleging that Huntsville Hospital and the physician had been negligent and wanton by failing to inform him of the existence of the pituitary tumor following the 2002 CT scan that identified the tumor. Huntsville Hospital and the physician moved the trial court to dismiss the claims against them pursuant to Rule 12(b)(6), Ala. R. Civ. P. The defendants in Crosslin argued that the alleged breach of the standard of care in that case was a failure to inform the plaintiff of the presence of a pituitary tumor on February 23, 2002, and that, if the defendants breached the standard of care and caused damage as the plaintiff claims, he would have been damaged on the same date as the alleged negligence, because he was already suffering from the tumor. Because the plaintiff did not file his complaint until four years and one day after February 23, 2002, the defendants argued that the plaintiffs action was barred by the four-year period for repose set forth in § 6-5-482(a).
The plaintiff amended his complaint to allege that he suffered bodily injury after February 24, 2002, and argued in opposi *742 tion to the motion to dismiss that his cause of action did not accrue until he suffered an injury, which, according to his amended complaint, allegedly happened after February 24, 2002. Thus, he argued, his complaint was not barred by § 6-5-482(a).
The trial court granted the defendants’ motion to dismiss. In reversing the trial court’s order dismissing the plaintiffs action as untimely, this Court stated:
“This Court has held that the four-year period of repose in § 6-5-482(a) ‘is an “absolute bar to all medical malpractice claims which are brought more than four years after the cause of action accrues.’” Ex parte Sonnier, 707 So.2d 635, 637 (Ala.1997) (quoting Bowlin Horn v. Citizens Hosp., 425 So.2d 1065, 1070 (Ala.1982)). ‘A cause of action “accrues” under § 6-5-482 when the act complained of results in legal injury to the plaintiff.’ Mobile Infirmary v. Del-champs, 642 So.2d 954, 958 (Ala.1994). “When the wrongful act or omission and the resulting legal injury do not occur simultaneously, the cause of action accrues and the limitations period of § 6-5-482 commences when the legal injury occurs.’ Id.; see also Grabert v. Light-foot, 571 So.2d 293, 294 (Ala.1990) (‘ “The statutory limitations period does not begin to run until the cause of action accrues.... A cause of action accrues when the act complained of results in injury to the plaintiff.’” (quoting Col-burn v. Wilson, 570 So.2d 652, 654 (Ala. 1990))); Ramey v. Guyton, 394 So.2d 2, 4 (Ala.1981) (noting that when the negligent act and the resultant harm do not coincide, the accrual date of a cause of action under the [Alabama Medical Liability Act] is the date of the latter).
“In the present case, [the plaintiff] has alleged that Huntsville Hospital and [the physician] failed to inform him that he had a tumor on his pituitary gland on February 23, 2002. [The plaintiff] has alleged that, as a result of the failure of Huntsville Hospital and [the physician] to inform him of the existence of the pituitary tumor, he later suffered vision loss in both of his eyes. Thus, it appears that the legal injury [the plaintiff] is alleging is that, because Huntsville Hospital and [the physician] did not inform him of the existence of the pituitary tumor when it was discovered on February 23, 2002, he did not have the condition remedied before the tumor worsened and other physical injuries were caused by it.
“The allegations of the complaint, if taken as true, do not foreclose the possibility of [the plaintiffs] proving a set of facts that would entitle him to relief. For example, the evidence might show that the tumor was not in a growth phase when [the physician] first diagnosed it on February 23, 2002, and therefore that the tumor did not worsen on that date. Nor do the allegations of the complaint foreclose the possibility of proof that, even if the tumor did worsen on February 23, 2002, a disclosure of the presence of the tumor to [the plaintiff] on February 23, 2002, would likely not have resulted in surgery on that same day so as to halt whatever worsening of his condition otherwise would have occurred between that day and the following day, February 24, 2002. Indeed, even after the tumor was discovered in a much advanced state several years later, surgery to remove it was not scheduled until two days after its discovery. In other words, the complaint does not, on its face, establish that Huntsville Hospital’s and [the physician’s] failure to inform [the plaintiff] of the tumor on February 23, 2002, resulted in any actual injury to [the plaintiff] before February 24, 2002, the first day of the four-year period in question.
*743 “Relying on Grabert v. Lightfoot, supra, and Tobiassen v. Sawyer, 904 So.2d 258 (Ala.2004), Huntsville Hospital and [the physician] argue that [the plaintiff] necessarily sustained a legal injury on February 23, 2002, the date they allegedly failed to inform him of the existence of the pituitary tumor, and that, therefore, his action is time-barred under § 6-5-482(a). Grabert and Tobiassen, however, are distinguishable because in those cases the act of alleged medical malpractice immediately caused an identifiable injury to the complaining party and that injury fell outside the applicable time period, whereas, in the present case, [the plaintiffs] complaint does not foreclose his ability to prove that the injury caused by Huntsville Hospital’s and [the physician’s] alleged malpractice did not occur until some time after the actual act of malpractice and therefore within the applicable time period.
“In Grabert, the plaintiff was diagnosed with a hernia and underwent surgery for the purpose of repairing it. During that surgery, however, the surgeon failed to locate and repair the hernia. After a second surgery to repair the hernia left the plaintiff impotent, he sued the first surgeon because of that surgeon’s failure to remedy the hernia during the first surgery. We held that the plaintiffs cause of action for medical malpractice accrued on the date of the first surgery because it was immediately after the first, unsuccessful operation that the plaintiff was entitled to maintain an action against the surgeon. Gra-bert, 571 So.2d at 294. Because of the alleged negligence of the first surgeon, the plaintiff had ‘suffered’ a surgery that availed him nothing.
“Unlike the malpractice at issue in Grabert, [the physician’s] alleged failure to inform [the plaintiff] of the existence of the pituitary tumor did not, in and of itself, cause [the plaintiff] any actual injury. As explained above, [the plaintiff] may be able to prove a set of facts establishing that he suffered no actual injury until within the applicable four-year period at issue. Thus, our holding in Grabert does not compel a finding in this case that [the plaintiffs] injury arose at the time of Huntsville Hospital’s and [the physician’s] alleged negligent or wanton act or omission.”
Crosslin, 5 So.3d at 1196-99 (footnotes omitted).
In Delchamps, the plaintiff, on December 5, 1985, underwent surgery to place temporomandibular implants in her jaw. On December 10, 1991, X-rays indicated that the implants had caused severe bone degeneration in the plaintiffs temporo-mandibular joints. On June 2, 1992, the plaintiff sued various defendants alleging various theories of recovery, including negligence. On July 8, 1992, the plaintiff amended her complaint to add Mobile Infirmary as a defendant. Mobile Infirmary moved the trial court to dismiss the complaint against it, alleging that the claims were barred by § 6-5-482(a). The trial court denied the motion to dismiss; Mobile Infirmary was permitted to appeal the denial of its motion pursuant to Rule 5, Ala. R.App. P. In affirming the denial of the motion to dismiss, this Court stated:
“The limitations period of § 6-5-482 commences with the accrual of a cause of action. Street v. City of Anniston, 381 So.2d 26 (Ala.1980); Bowlin Horn v. Citizens Hosp., 425 So.2d 1065 (Ala.1983); Ramey v. Guyton, 394 So.2d 2 (Ala.1981). A cause of action ‘accrues’ under § 6-5-482 when the act complained of results in legal injury to the plaintiff. Grabert v. Lightfoot, 571 So.2d 293, 294 (Ala.1990); Colburn v. Wilson, 570 So.2d 652, 654 (Ala.1990). The statutory limitations period begins to run *744 whether or not the full amount of damages is apparent at the time of the first legal injury. Garrett V. Raytheon Co., 368 So.2d 516, 518 (Ala.1979). When the wrongful act or omission and the resulting legal injury do not occur simultaneously, the cause of action accrues and the’limitations period of § 6-5-482 commences when the legal injury occurs. Moon v. Harco Drugs, Inc., 435 So.2d 218, 219 (Ala.1983); Ramey v. Guyton, 394 So.2d 2, 4-5 (Ala.1981).
“Mobile Infirmary argues that [the plaintiffs] claims are barred by § 6-5-482 because, it says, they accrued on December 5, 1985, when the Vitek II implants were surgically placed in [the plaintiffs] jaw, not, as she contends, on December 10, 1991, when she ‘discovered’ the injury from X-rays. Mobile Infirmary also contends that in asserting that her claims accrued on December 10, 1991, [the plaintiff] elides the distinction between the date of discovery and the date of legal injury. Mobile Infirmary asserts that, according to the allegations of her complaint, [the plaintiff] was legally injured, however slightly, when the defective implants were surgically inserted into her jaw. Because, Mobile Infirmary ■ says, [the plaintiffs] complaint alleges that she suffered injury at the time of the December 5,1985, operation, her claims were brought beyond the limitations period of § 6-5-482, which, it says, expired on December 5, 1987.
“[The plaintiff] responds by arguing that her causes of action accrued on December 10, 1991, when X-rays first revealed the bone degeneration she alleges was caused by the December 5, 1985, surgical placement of the Vitek II implants. Citing Ramey v. Guyton, 394 So.2d 2 (Ala.1980), [the plaintiff] contends that although the negligent act occurred on December 5, 1985 (the date of the alleged act or omission), the ‘legal injury’ did not occur until December 10, 1991 (the date the X-rays first revealed the bone degeneration). The implication of [the plaintiffs] argument is that the bone degeneration, the ‘legal injury,’ occurred, and was not merely discovered, on December 10, 1991. [The plaintiff] contends that her causes of action did not accrue until December 10, 1991, and that, therefore, she filed her action well within the two-year limitations period of § 6-5-482, which she says would not have expired until December 10, 1993.
“After reviewing the allegations of [the plaintiffs] complaint in light of the applicable standard of review, we cannot' say that [the plaintiff] can prove no set of facts that would entitle her to recover. Whether her claims are barred by § 6-5-482 depends on when in fact she first suffered the alleged legal injury, i.e., bone degeneration in her jaw. [The plaintiffs] complaint, as presently amended, alleges the date on which the implant was placed in her jaw and the date on which she first became aware of the alleged injury to her jaw. The key fact not alleged is the time when [the plaintiff] first suffered the alleged bone degeneration. Considering the type of personal injury alleged and the alleged cause of this injury, we must conclude that she may be able to establish that although the implants were placed in her jaw on December 5, 1985, she did not suffer legal injury until December 10, 1991, or some other time within two years of the filing of her complaint. [The plaintiff] is entitled to present evidence establishing the time at which the bone degeneration began.”
Delchamps, 642 So.2d at 958.
David’s reliance upon Crosslin and Del-champs is misplaced. In both Crosslin and Delchamps, the complained-of negligent *745 acts — failure to inform the patient of the presence of a tumor and the implantation of defective implants, respectively — did not immediately cause an identifiable legal injury. Rather, this Court concluded that, although the negligent acts complained of in those cases occurred beyond the four-year period of repose in § 6-5-482(a), the plaintiffs may have been be able to prove a set of facts indicating that the actual legal injury, i.e., complications from the tumor and temporomandibular bone degeneration, occurred within the four-year period of repose in § 6-5-482(a).
The situation in this case is more akin to those presented in Jones and Grabert, in which this Court determined that the plaintiffs suffered an immediate legal injury at the time of the alleged negligent act. In Jones, a case factually similar to the present ease, the plaintiff suffered an actionable legal injury at the time the surgeon performed the surgery and left the gauze inside the plaintiffs body at the surgical site. In Grabert, the plaintiff suffered an actionable legal injury at the time the physician burdened the plaintiff with an invasive procedure without successfully locating and repairing the hernia.
Here, it is clear from the face of the second amended complaint that Gertha underwent a surgical procedure in 2006; that Dr. Hodge left a surgical hemostat clamp in her body at that time; and that she filed a medical-malpractice complaint on March 5, 2012. It is clear from the face of the second amended complaint that Ger-tha suffered an actionable legal injury at the time of the surgery in 2006 when Dr. Hodge left the hemostat clamp in her body, regardless of when or to what extent the complications from the negligent act would be discovered. Therefore, her medical-malpractice complaint filed on March 5, 2012, was barred by the four-year period of repose found in § 6-5-482(a). Because Gertha did not have a viable medical-malpractice action at the time of her death, David could not maintain a wrongful-death action. Hall, supra. Accordingly, we conclude that the defendants have established a clear legal right to the relief sought. ■

2. Other Adequate Remedy

■ [4] David argues that the petitions should be denied because the defendants failed to seek a permissive appeal pursuant to Rule 5, Ala. RApp. P. Generally, an order denying a motion for a summary judgment is not appealable, except by permission pursuant to Rule 5, Ala. R.App. P. F.A. Dobbs & Sons, Inc. v. Northcutt, 819 So.2d 607, 609 (Ala.2001). This Court has stated:
“The general rule is that 1 “a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment.” ’ Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998) (quoting Ex parte Central Bank of the South, 675 So.2d 403 (Ala.1996)). In all but the most extraordinary cases, an appeal is an adequate remedy; however, there are exceptions — for example, when the trial court denies a motion for a summary judgment that is based on an argument that governmental immunity bars the plaintiffs claim. See, e.g., Ex parte Butts, 775 So.2d 173, 177-78 (Ala.2000). In such a case, the defendant may seek pretrial appellate review by petitioning for permission to appeal an interlocutory order in accordance with Rule 5, Ala. R.App. P., or by petitioning for a writ of mandamus. See id.
“In Ex parte Southland Bank, 514 So.2d 954, 955 (Ala.1987), this Court stated that ‘[t]he fact that a statute of limitations defense is applicable is not a proper basis for issuing a writ of manda *746 mus, due to the availability of a remedy by appeal.’ 514 So.2d at 955. Subject to a narrow exception, that statement remains true. In a narrow class of cases involving fictitious parties and the relation-back doctrine, this Court has reviewed the merits of a trial court’s denial of a summary-judgment motion in which a defendant argued that the plaintiffs claim was barred by the applicable statute of limitations.”
Ex parte Jackson, 780 So.2d 681, 684 (Ala.2000).
As discussed above, the defendants have demonstrated from the face of Gertha’s complaint a clear legal right to the relief sought. Once the trial court denied their motions for a summary judgment, the defendants were left with seeking a permissive appeal pursuant to Rule 5, Ala. R.App. P., petitioning this Court for a writ of mandamus, or possibly taking an appeal from a final verdict or judgment. Rule 5(a), Ala. R.App. P., provides:
“A party may request permission to appeal from an interlocutory order in civil actions under limited circumstances. Appeals of interlocutory orders are limited to those, civil cases that are within the original appellate jurisdiction of the Supreme Court. A petition to appeal from an interlocutory order must contain a certification by the trial judge that, in the judge’s opinion, the interlocutory order involves a controlling question of law as to which there is substantial ground for difference of opinion, that an immediate appeal from the order would materially advance the ultimate termination of the litigation, and that the appeal would avoid protracted and expensive litigation. The trial judge must include in the certification a statement of the controlling question of law.”
Justice Murdock aptly explained, in his special concurrence in Ex parte Alamo Title Co., 128 So.3d 700, 714-15 (Ala.2013), the inadequacy of a Rule 5 permissive appeal and/or the taking of an appeal from a final verdict or judgment, as alternative remedies where a petitioner has established a clear legal right to the relief sought. As to Rule 5, Justice Murdock stated:
“[T]he standard referenced for mandamus relief — a ‘clear legal right’ to the relief — is the standard for actually ‘winning1 relief in the appellate court. The standard referenced for Rule 5 — that there be a controlling question of law as to which there is ‘substantial ground for difference of opinion’ — is merely the standard that must be met to get one’s grievance before the appellate court in the first place.
[[Image here]]
“More fundamentally, Rule 5 is indeed limited to rulings involving ‘questions of law’ and, specifically, unsettled questions ■for which there is a ground for substantial difference of opinion. Such uncertainty simply is not characteristic of most disputes over subject-matter jurisdiction, in personam jurisdiction, immunity, venue, discovery, and fictitious-party practice in the context of a statute-of-limitations concern, all of which are subjects as to which legal principles are well established and as to which we repeatedly have held that mandamus relief may be appropriate. Instead, the types of disputes listed above typically turn, as does the dispute in the present case, on whether the trial court has exceeded its discretion in deciding whether the evidence presented justifies factual findings sufficient to meet a well settled legal standard.
“Finally, but perhaps most importantly, there is no right to a Rule 5 certification. Granting ‘permission’ to appeal an interlocutory order is within the wide *747 discretion of the trial judge, and a question exists as to whether appellate relief would even be available on the ground that the trial court exceeded some measure of discretion. Even if the trial court gives its consent, this Court must agree to accept the question certified. See Rule 5(c), Ala. R.App. P. I fail to see how that to which a party has no right can be deemed a true ‘remedy.’ ”
Ex parte Alamo Title Co., 128 So.3d at 714-15 (Murdock, J., concurring specially) (footnote omitted; emphasis added).
As for the notion that further litigation in the trial court and the eventual taking of an appeal from a final judgment provides an adequate remedy, Justice Mur-dock stated:
“In Ex parte L.S.B., 800 So.2d 574 (Ala.2001), this Court held that the standard for whether some remedy other than mandamus is ‘adequate’ is not whether there simply is some other remedy, e.g., an eventual appeal, but whether that other remedy is ‘adequate to prevent undue injury.’ 800 So.2d at 578. As a result, the Court noted that mandamus would lie to address certain discovery disputes, to enforce compliance with the court’s mandate, to enforce a right to a jury trial, and to vacate certain interlocutory rulings in divorce cases. Id. at 578. All of these — indeed, virtually any ground for mandamus relief— could eventually be raised in an appeal from a final judgment. Yet we do not consider this to be an ‘adequate’ remedy in many cases.
“Long before L.S.B. was decided, this Court discussed • the requirement that the alternative remedy be adequate to avoid the particular harm at issue:
“‘[T]he appeal must be an adequate remedy[;] it must be capable of protecting parties from the injury immediately resulting from the error of the court. While the error in refusing a dismissal for want of security for costs, may be available on error for the reversal of a judgment, obviously, an appeal is not an adequate remedy. The citizen is compelled into litigation with a non-resident, pending the further continuance of the suit and the appeal, without indemnity against the costs, the evil the statute intends to avoid. Hence, it has been the uniform course of decision that mandamus is an appropriate remedy to compel the dismissal of such suit.’
“First Nat’l Bank of Anniston v. Cheney, 120 Ala. 117,121-22, 23 So. 733, 734 (1898) (citations omitted).
“The view expressed in Cheney is consistent with the view expressed elsewhere:
“ ‘It is the mere inadequacy and not the mere absence of all other legal remedies, and the danger of the failure of justice without it, that must usually determine the propriety of the writ. Where none but specific relief will do justice, specific relief should be granted if practicable, and when a right is single and specific it usually is practicable.
“ ‘To supersede the remedy by mandamus a party must not only have a specific, adequate, legal remedy, but one competent to afford relief upon the very subject of his application.’
“2 W.F. Bailey, A Treatise on the Law of Habeas Corpus and Special Remedies 825-26 (1913) (emphasis added).
“In the present case, the position expressed in Part II.B of the dissent is that mandamus does not lie to remedy the trial court’s failure to dismiss the claims against Alamo for lack of in per-sonam jurisdiction because Alamo has available to it the following alternative and allegedly adequate remedy: ‘ “con- *748 tinu[ing] to challenge personal jurisdiction in ... answers to the complaint and by motions for summary judgment or at trial” ’ and, if unsuccessful in all of these, pursuing an appeal. 128 So.3d at 713 (quoting Ex parte United Insurance Cos., 936 So.2d 1049, 1056 (Ala.2006)). Although the dissent cites Ex parte United Insurance Cos. for the proposition that the petitioner can in fact continue to challenge personal jurisdiction in these ways, that case does not stand for the proposition that the right to do so in a case challenging in personam jurisdiction is an ‘adequate remedy1 that justifies the refusal of the appellate court to hear a mandamus petition.
“Indeed, the very reason for the limited exceptions we have carved out to the general rule that interlocutory denials of motions to dismiss and motions for a summary judgment cannot be reviewed by way of a petition for a writ of mandamus is that there are certain defenses (e.g., immunity, subject-matter jurisdiction, in personam jurisdiction, venue, and some statute-of-limitations defenses) that are of such a nature that a party simply ought not to be put to the expense and effort of litigation. The cases recognizing the availability of mandamus relief as to such matters are countless. Further, we have not been asked to overrule any of these cases.
“Nor do I believe we should consider overruling this precedent, even in a case in which we might be asked to do so. It simply is not an ‘adequate remedy’ — i.e., as stated in Ex parte L.S.B., a remedy ‘adequate to prevent undue injury’ or, as Bailey states, a remedy ‘competent to afford relief upon the very subject of his application’ — to say to a party that has no meaningful contact with the State of Alabama or who, under our precedents, is protected by sovereign immunity from even going through litigation much less from liability that he or she must simply ‘further litigate’ the case and one day take an appeal. In a given case, such an approach could subject a defendant to years of litigation, hundreds of thou- • sands of dollars in attorney fees and other litigation expenses, the time, effort, and expense of traveling to Alabama from elsewhere in the country for depositions.and hearings (in the case of the party with no contact with the State), and a cloud of uncertainty and worry hanging over the party’s business or personal affairs all this time. I cannot agree that further litigation and an eventual appeal serves as an ‘adequate remedy1 that meets these ‘subjects.’ ”
Ex parte Alamo Title Co., 128 So.3d at 715-17 (Murdock, J., concurring special-lyXfootnote omitted).
Based on the particular circumstances of this case, we agree with Justice Murdock’s assessment of a Rule 5 permissive appeal as being an inadequate alternative remedy. As discussed above, the defendants have demonstrated a clear legal right from the face of Gertha’s complaint to a summary judgment in their favor. The question presented here is not the type of unsettled question of law for which there is a ground for substantial difference of opinion that is generally considered in a Rule 5 permissive appeal. More importantly, there is no guarantee of Rule 5 certification because certifying an interlocutory order for a “permissive” appeal is within the wide discretion of the trial judge. Moreover, should the trial court grant its consent to appeal, there is no guarantee that this Court would accept the question certified.
Likewise, the taking of an appeal from a final judgment following further litigation of this matter is also an inadequate remedy based on the particular cir *749 cumstances of this case. If appeal were their only remedy the defendants would potentially face the substantial expense, time, and effort of litigating a matter as to which they have demonstrated from the face of Gertha’s complaint a clear legal right to have dismissed.

3. Mandamus as Permissible Remedy

As noted above, a writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: “ ‘(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’” Ex parte Nall, 879 So.2d at 543 (quoting Ex parte BOC Grp., Inc., 823 So.2d at 1272 (emphasis added)). Although characterized as an extraordinary writ, this Court has repeatedly recognized that mandamus may be appropriate in disputes over subject-matter jurisdiction, Ex parte Johnson, 715 So.2d 783 (Ala.1998); in personam jurisdiction, Ex parte Northstar Battery Co., 99 So.3d 1204 (Ala.2012); immunity, Ex parte Butts, 775 So.2d 173 (Ala.2000); venue, Ex parte Daniels, 941 So.2d 251 (Ala.2006); outbound forum-selection clauses, Ex parte Bad Toys Holdings, Inc., 958 So.2d 852 (2006); abatement, Ex parte J.E. Estes Wood Co., 42 So.3d 104 (Ala.2010); and issues involving discovery, Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810 (Ala.2003).
As noted above, this Court has stated that the applicability of a statute-of-limitations defense is not a proper basis for issuing a writ of mandamus, because of the availability of a remedy by appeal. Ex parte Southland Bank, 514 So.2d 954, 955 (Ala.1987). However, this Court has recognized a narrow exception to the general rule regarding a statute-of-limitations defense involving fictitious parties and the relation-back doctrine, in which this Court has reviewed the merits of a trial court’s denial of a summary-judgment motion where the defendant argued that the plaintiffs claim was barred by the applicable statute of limitations. Ex parte Jackson, supra.
Although the situation with which we are presented here does not involve the statute-of-limitations defense in the context of fictitious-party practice and the relation-back doctrine, the defendants, Dr. Hodge and Tombigbee Healthcare, are faced with the extraordinary circumstance of having to further litigate this matter after having demonstrated from the face of the plaintiffs complaint a clear legal right to have the action against them dismissed based on the four-year period of repose found in § 6-5-482(a). Having concluded that an appeal pursuant to Rule 5 or an appeal from a final judgment following further litigation is not an adequate remedy in this case, we conclude, based on the particular circumstances of this case, that mandamus is necessary in order to avoid the injustice that would result from the unavailability of any other adequate remedy. See Ex parte J.Z., 668 So.2d 566 (Ala.1995). This case is not to be read as a general extension of mandamus practice in the context of a statute-of-limitations defense; rather, it should be read simply as extending relief to the defendants in this case where they have demonstrated, from the face of the complaint, a clear legal right to relief and the absence of another adequate remedy.
1121194 — PETITION GRANTED; WRIT ISSUED.
1121217 — PETITION GRANTED; WRIT ISSUED.
STUART, PARKER, and WISE, JJ., concur.
*750 MURDOCK and SHAW, JJ., concur specially.
BRYAN, J., concurs in the result.
MOORE, C.J., dissents.

. Although the original complaint asserted that the surgery was performed in 2005, David asserted in the second amended complaint that Gertha underwent the hysterectomy in May 2006. For purposes of discussion we will use May 2006 as the date of the hysterectomy. However, in summarizing the parties' arguments, we will use 2005 as the date, that being the date to which the materials filed before the second amended complaint were geared.

. The previously filed personal-injury claims, including those filed pursuant to the Alabama Medical Liability Act, survived Gertha’s death. See § 6-5-462, Ala.Code 1975; King v. National Spa & Pool Inst., Inc., 607 So.2d 1241 (Ala.1992).

. David also added Dr. Jerry Luther as an additional defendant in the second amended complaint.

. We note that Garrett involved a personal-injuiy action based on a chemical exposure and has been overruled on other grounds.