BRYAN, Justice.
James S. Holbrook, Jr., and William K. Holbrook ("the Holbrooks") filed a notice of appeal from a postjudgment order of the Jefferson Circuit Court ("the trial court") that reinstated Harold Lowell Wainwright's claims against them, which the trial court had previously disposed of by granting the Holbrooks' motion to dismiss as to certain claims and their motion for a summary judgment as to others. Jon S. Sanderson; Eric B. Needleman; Sal A. Nunziata; Robert G. Nunziata; Walter S. Robertson III; Walter A. Ruch III; Henry S. Lynn, Jr.; Linda M. Daniel; Jay W. Carter; and Joe R. Roberts, Jr. ("the non-Holbrook directors"), who are codefendants with the Holbrooks in Wainwright's action, petition this Court for a writ of mandamus directing the trial court to vacate its postjudgment order that reinstated Wainwright's claims against them, which the trial court had previously disposed of by entering a summary judgment for the non-Holbrook directors.
Facts and Procedural History
On July 2, 2014, Traci Salinas and Sharon Lee Stark, as shareholders of Sterne Agee Group, Inc. ("SAG"), a Delaware corporation, filed a shareholder-derivative action, on behalf of nominal defendant SAG, against the Holbrooks and the non-Holbrook directors, who together composed the SAG board of directors. Salinas and Stark alleged that the Holbrooks had breached their fiduciary duty to the SAG shareholders by misusing, misappropriating, and wasting corporate assets and that the non-Holbrook directors had knowledge of, and had acquiesced in, the Holbrooks' alleged misconduct.
In 2015, while Salinas and Stark's action was pending, SAG entered into a merger *683 agreement with Stifel Financial Corp. ("Stifel") pursuant to which Stifel would acquire SAG ("the merger"). As a result of the merger, each share of certain classes of SAG stock was to be converted into a right of the shareholder to receive a pro rata share of merger consideration in cash and/or shares of Stifel common stock. As a precondition to receiving merger consideration, a SAG shareholder was required to execute an indemnification and release agreement ("the release agreement") releasing SAG, its directors, Stifel, and Saban Successor Subsidiary, LLC ("Saban"), a wholly owned subsidiary of Stifel,
"from any and all liabilities and obligations to [the shareholder] of any kind or nature whatsoever, in his, her or its capacity as a current or former equity holder, ... whether absolute or contingent, liquidated or unliquidated, known or unknown, ... and [the shareholder] agrees that he, she or it shall not seek to recover any amounts in connection therewith or thereunder from [SAG, its directors, Stifel, or Saban] ...."
The release agreement further provided that the claims covered by the agreement included, without limitation, "any claims for breach of fiduciary duty arising from any actions or inactions at or prior to" the merger and that the agreement was
"a general release and a covenant not to sue that extinguishes all claims released above and precludes any attempt by the [shareholder] to initiate any litigation against [SAG, its directors, Stifel, or Saban] with respect to the claims released above. If the [shareholder] commences any claim in violation of this release, [SAG, its directors, Stifel, and Saban] shall be entitled to assert this release as a complete bar."
On March 31, 2015, Wainwright, then a SAG shareholder, executed the release agreement and received in exchange for his shares of SAG stock $281,573.22 in cash and 18,994 shares of Stifel common stock, which were valued in the aggregate at approximately $1.09 million. The merger was completed on June 5, 2015. Approximately three months later, Salinas and Stark amended their complaint to add Wainwright as a plaintiff and to dismiss Stark as a plaintiff.
On September 4, 2015, the Holbrooks filed a motion for a summary judgment in which they argued that, under Delaware law, when a plaintiff in a shareholder-derivative action ceases to be a shareholder of the corporation on whose behalf the action was brought, the shareholder is divested of standing to continue prosecuting the derivative action. Thus, the Holbrooks argued, because Salinas and Wainwright were no longer SAG shareholders following the merger, they lacked standing to prosecute their derivative action and, the argument continued, the Holbrooks were entitled to a judgment as a matter of law.
In response, Salinas and Wainwright amended the complaint to allege that the Holbrooks' and the non-Holbrook directors' alleged misconduct asserted in the original complaint constituted "a snowballing pattern of fraudulent conduct" that allegedly forced the sale of SAG "at a significantly depressed value" in an allegedly fraudulent attempt "to cover massive wrongdoing." Salinas and Wainwright argued that a merger "cannot absolve fiduciaries from accountability for fraudulent conduct that necessitated the merger." Rather, they maintained, "such conduct gives rise to a direct claim that survives the merger, as the injury caused by such misconduct is suffered by the shareholders rather than the corporation, and thereby supports a direct cause of action." (Emphasis added.) Thus, given their allegations of fraud, Salinas and Wainwright asserted, in addition to the original derivative *684 claims, direct claims of breach of a fiduciary duty; negligence; and intentional, reckless, and innocent misrepresentation and suppression. Subsequently, the parties filed a stipulation of dismissal in which they dismissed Salinas from the action, leaving Wainwright as the sole plaintiff.
The Holbrooks filed a motion to dismiss Wainwright's amended complaint in which they asserted that Wainwright's direct claims were actually derivative claims, regardless of how Wainwright labeled them, and that, as such, the claims were due to be dismissed for the reasons set forth in the Holbrooks' motion for a summary judgment. Subsequently, the non-Holbrook directors filed a motion for a summary judgment in which they asserted the release agreement executed by Wainwright as a defense to Wainwright's claims, whether derivative or direct. Thereafter, the Holbrooks supplemented their motion to dismiss to assert the release agreement as a bar to Wainwright's claims.
In response to the Holbrooks' motion to dismiss and the non-Holbrook directors' motion for a summary judgment, Wainwright argued that the release agreement was unenforceable because, he said, it had been procured by fraud in that, he said, the Holbrooks and the non-Holbrook directors failed to make adequate disclosures regarding material terms of the merger. Wainwright further argued that the release agreement was unenforceable because, he said, it was not supported by consideration. Although Wainwright undisputedly received merger consideration, he argued that the merger consideration he received could not constitute consideration for the release agreement. According to Wainwright, payment for his shares of SAG stock was a preexisting duty owed to SAG shareholders by virtue of the merger, and, thus, Wainwright contended, Delaware law precluded SAG from conditioning payment for his shares of SAG stock upon an additional obligation, i.e., the execution of the release agreement.
On January 6, 2017, Judge Peyton C. Thetford entered a judgment ("the January judgment") dismissing Wainwright's derivative claims on the basis that, under Delaware law, Wainwright did not have standing to prosecute those claims after the merger because he was no longer a SAG shareholder. As to Wainwright's remaining claims, Judge Thetford determined that the Holbrooks and the non-Holbrook directors were entitled to a judgment as a matter of law on the basis that the release agreement precluded those claims. Judge Thetford rejected Wainwright's argument that the release agreement was not supported by consideration and also determined that, even if the release agreement was unsupported by consideration, Wainwright's failure to return the merger consideration he received for his SAG stock precluded him from challenging the validity of the release agreement on the basis that it had been procured by fraud.[1]
On February 6, 2017, Wainwright filed a motion to alter, amend, or vacate the January judgment. See Rule 59(e), Ala. R. Civ. P. On April 19, 2017, the trial court, then under the direction of Judge Brendette Brown Green, held a hearing on Wainwright's *685 motion. Subsequently, on May 8, 2017, Judge Green entered an order ("the May order") in which she concluded that Judge Thetford's rulings "rest[ed] upon a manifest error of law."[2] As a result, the May order granted Wainwright's postjudgment motion, thus reinstating his claims against each defendant, and ordered the parties to proceed with discovery.
On June 16, 2017, the Holbrooks filed a notice of appeal from the May order. Wainwright moved to dismiss the appeal, arguing that, because the May order reinstated his claims, that order was interlocutory and, thus, would not support the Holbrooks' appeal. On June 19, 2017, the non-Holbrook directors, seeking to have the May order set aside and the January judgment reinstated, petitioned this Court for a writ of mandamus. The non-Holbrook directors' petition was assigned case no. 1160824. This Court elected to treat the Holbrooks' appeal as a petition for a writ of mandamus, see F.L. Crane & Sons, Inc. v. Malouf Constr. Corp., 953 So.2d 366 (Ala. 2006), and assigned the Holbrooks' petition case no. 1160832. We then consolidated the two petitions for the purpose of writing a single opinion.[3] The Holbrooks and the non-Holbrook directors are hereinafter collectively referred to as "the petitioners."
Discussion
Before reaching the merits of the petitions, we must first address Wainwright's contention that the May order is not properly reviewable by petition for a writ of mandamus and, thus, that the petitions are due to be denied. Because the May order vacated the January judgment and reinstated Wainwright's claims, it operated as a denial of the Holbrooks' motion to dismiss and the non-Holbrook directors' motion for a summary judgment. " ' "The denial of a motion to dismiss or a motion for a summary judgment generally is not reviewable by a petition for writ of mandamus, subject to certain narrow exceptions ...." ' " Ex parte University of South Alabama, 183 So.3d 915, 918 (Ala. 2016) (quoting Drummond Co. v. Alabama Dep't of Transp., 937 So.2d 56, 57 (Ala. 2006), quoting in turn Ex parte Haralson, 853 So.2d 928, 931 n. 2 (Ala. 2003) ). " 'In all but the most extraordinary cases, an appeal is an adequate remedy ....' " Ex parte Watters, 212 So.3d 174, 181 (Ala. 2016) (quoting Ex parte Jackson, 780 So.2d 681, 684 (Ala. 2000) (emphasis added) ). In Ex parte U.S. Bank National Ass'n, 148 So.3d 1060 (Ala. 2014), this Court recognized that one of the exceptions under which this Court will review by a petition for a writ of mandamus the denial of a motion to dismiss or a motion for a summary judgment is when there is a question regarding the trial court's subject-matter jurisdiction. 148 So.3d at 1064. Relying on that exception, the petitioners argue that the release agreement implicates the trial court's subject-matter jurisdiction in that, they say, it renders Wainwright's claims moot, and, the petitioners say, "moot[ness] raises a question of subject matter jurisdiction that is reviewable by mandamus." The non-Holbrook directors' petition, at 2. Wainwright argues, on the other hand, that a release is an affirmative defense that, even if valid and applicable to a plaintiff's *686 claims, does not divest a trial court of subject-matter jurisdiction over those claims.
In support of their argument that the release agreement moots Wainwright's claims, the petitioners cite Pharmacia Corp. v. Suggs, 932 So.2d 95 (Ala. 2005). In Pharmacia Corp., John and Linda Suggs sued multiple defendants in state court in a putative class action. (The state court refused to certify the class.) The Suggses' action was stayed pending resolution of a related federal action, and, ultimately, the parties to the federal action entered into a settlement agreement that discharged and satisfied all claims the Suggses had or could have had against the defendants. Although the Suggses received payments under the settlement agreement, they refused to enter into a stipulation of dismissal of the state action and later filed a motion for substitution and/or joinder of new plaintiffs to the purported class action. The circuit court presiding over the action entered an order granting the Suggses' motion, and this Court granted the defendants' petition for permissive appeal to address whether plaintiffs who have entered into a settlement agreement and have accepted payment in satisfaction of their claims can subsequently amend their complaint to substitute new plaintiffs. In reversing the circuit court's order, this Court stated: "Because the Suggses accepted the settlement that resulted in the entirely appropriate dismissal of their claims in this case, the matters made the basis of the complaint became moot, and the trial court no longer had subject-matter jurisdiction to entertain a motion to amend the moot complaint." 932 So.2d at 99. Given that holding, the petitioners argue that the release agreement executed by Wainwright "terminat[ed] any case or controversy, rendering the case moot, and depriving the trial court of subject matter jurisdiction." The non-Holbrook directors' petition, at 6.
However, the facts of Pharmacia Corp. are distinguishable from the facts of this case. Particularly, with respect to mootness, there is a relevant distinction between a settlement agreement that disposes of pending litigation and a release executed before the releasor has commenced legal proceedings against the releasee. In the former scenario, when parties to pending litigation enter into an agreement that settles the pending claims in their entirety, the claims and the controversy giving rise to those claims become moot, and the parties leave nothing for the court presiding over the litigation to adjudicate. Thus, as we said in Pharmacia Corp., once the pending claims become moot, the court presiding over those claims is, in the absence of a controversy, divested of subject-matter jurisdiction. See Hasting v. Roberts, 230 So. 3d 391, 396 (Ala. 2017) (noting that, when a claim becomes moot, "there is no longer an actual controversy to be decided," and the court therefore lacks subject-matter jurisdiction over the claims).
On the other hand, in a case such as the one before us, when a releasor executes a release before initiating legal proceedings against the releasee, there are no pending claims to be mooted by the release, and the release does not "moot" any post-release claims the releasor might elect to bring. Granted, the release might ultimately bar the relief the releasor seeks pursuant to post-release claims, but, once the releasor files post-release claims, there is nevertheless an actual controversy that must be resolved by the court presiding over those claims, unlike the case in which a settlement agreement disposes of pending claims and leaves nothing for the court presiding over those claims to adjudicate.
*687 Compare Pharmacia Corp., supra, with American Homes & Land Corp. v. C.A. Murren & Sons Co., 990 So.2d 871 (Ala. 2008) (affirming summary judgment in dispute as to whether the plaintiff's post-release claims were outside the scope of the release and holding that they were not); Newburn v. Dobbs Mobile Bay, Inc., 657 So.2d 849 (Ala. 1995) (holding that whether a release was unenforceable on ground that it was executed under economic duress was a question of fact precluding summary judgment); and Cleghorn v. Scribner, 597 So.2d 693 (Ala. 1992) (affirming summary judgment, holding that a release was not unenforceable on grounds that it was procured by fraud and was not supported by consideration). Thus, Pharmacia Corp. does not support the petitioners' argument that the release agreement mooted Wainwright's as yet unasserted claims and thus divested the trial court of subject-matter jurisdiction over those claims.[4]
In addition, a release is an affirmative defense that is waived if not affirmatively pleaded. See Rule 8(c), Ala. R. Civ. P. (recognizing release as an affirmative defense); and McCrary v. Butler, 540 So.2d 736, 740 (Ala. 1989) (" Rule 8(c)... requires that an affirmative defense be specially pleaded. Failure to affirmatively set forth a defense required to be affirmatively pleaded constitutes a waiver of the defense."). Thus, because the defense of release is waivable, it logically follows that a release, even if valid, does not divest a trial court of subject-matter jurisdiction to consider post-release claims because it is well established that subject-matter jurisdiction cannot be waived. Russell v. Fuqua, 176 So.3d 1224, 1227 (Ala. 2015). Compare Atkinson v. State, 986 So.2d 408 (Ala. 2007) (noting that the State cannot waive the defense of sovereign immunity because the immunity defense implicates a court's subject-matter jurisdiction).[5]
Because a release asserted as a defense to post-release claims does not moot those claims or otherwise implicate a trial court's subject-matter jurisdiction, the May order does not fall within the subject-matter-jurisdiction exception to the general rule that this Court will not review by a petition for a writ of mandamus an interlocutory order denying a motion to dismiss or a motion for a summary judgment.
Furthermore, we are not persuaded by the petitioners' argument that a future appeal will be an inadequate remedy and thus that mandamus review is appropriate in this case. According to the petitioners, a subsequent appeal is an inadequate remedy in this case because, they say, requiring them to litigate Wainwright's claims and then appeal from an adverse judgment will deprive them of the benefit of the release agreement, given that, the petitioners say, "the purpose of a release is to prevent the released parties from having to litigate the released claims." The non-Holbrook directors' petition, at 19.
This Court has recognized that an appeal is an inadequate remedy in cases *688 where it has determined that a defendant should not have been subjected to the inconvenience of litigation because it was clear from the face of the complaint that the defendant was entitled to a dismissal or to a judgment in its favor. See Ex parte Hodge, 153 So.3d 734, 749 (Ala. 2014) (holding that an appeal from a final judgment was an inadequate remedy where the defendants were "faced with the extraordinary circumstance of having to further litigate this matter after having demonstrated from the face of the plaintiff's complaint a clear legal right to have the action against them dismissed"); and U.S. Bank, 148 So.3d at 1065 (issuing a writ of mandamus directing the dismissal of the plaintiff's case where it was "apparent on the face of the complaint that there is an obvious conflict-of-laws issue" and it "would waste the resources of the court and the parties, and an appeal after a final judgment would be an inadequate remedy, where an action would be barred if the law of another state applied" (emphasis added) ). See also Hodge, 153 So.3d at 748 (noting that " 'the very reason for the limited exceptions we have carved out to the general rule that interlocutory denials of motions to dismiss and motions for a summary judgment cannot be reviewed by way of a petition for a writ of mandamus is that there are certain defenses (e.g., immunity, subject-matter jurisdiction, in personam jurisdiction, venue, and some statute-of-limitations defenses) that are of such a nature that a party simply ought not to be put to the expense and effort of litigation' " (quoting Ex parte Alamo Title Co., 128 So.3d 700, 716 (Ala. 2013) (Murdock, J., concurring specially) ) ).
However, aside from the limited exceptions recognized by this Court and those cases in which it is clear from the face of the complaint that a defendant is entitled to a dismissal or a judgment in its favor, the drastic and extraordinary remedy of a writ of mandamus is not available merely to alleviate the inconvenience and expense of litigation for a defendant whose motion to dismiss or motion for a summary judgment has been denied. Thus, in cases where no recognized exception is applicable and in cases where it is not clear from the face of the complaint that a defendant has a clear legal right to a dismissal or a judgment in its favor, this Court has declined to issue the extraordinary writ and has held that an appeal following a final judgment is an adequate remedy. See Watters, 212 So.3d at 182 (denying mandamus relief, and holding that an appeal was an adequate remedy, in a case where it was "not abundantly clear from the face of the complaint" that the defendant was entitled to dismissal because the issue whether a client's legal-malpractice claim sounded in tort, which would not survive the client's death, or contract, which would survive the client's death, was "sharply disputed by the parties" (second emphasis added) ).
Here, although the petitioners argue that the release agreement precludes Wainwright's claims, we cannot say that that conclusion is clear from the face of the complaint. Even if we assume (which we do not) that it is clear from the face of the complaint that Wainwright's claims are within the scope of the release agreement, Wainwright has argued that the release agreement is unenforceable, and, if he is able to prove as much, the release agreement will not bar his claims. Which party has the better of the argument regarding the validity and applicability of the release agreement is of no consequence to us at this stage of the proceedings, nor should anything in this opinion be interpreted as a commentary on either the viability of Wainwright's claims or whether the release agreement bars those claims. For our purposes, it is sufficient to note that, given Wainwright's allegation that the release agreement is unenforceable, it is "not abundantly clear,"
*689 Watters, 212 So.3d at 182, from the face of the complaint that the petitioners are entitled to relief based on the release agreement. Accordingly, as in Watters, supra, the circumstances of this case do not warrant the extraordinary remedy of a writ of mandamus. If Wainwright obtains a judgment against the petitioners, an appeal will serve as an adequate remedy. See Regional Health Servs., Inc. v. Hale Cty. Hosp. Bd., 565 So.2d 109 (Ala. 1990).
Conclusion
For the reasons set forth above, the May order does not come within the subject-matter-jurisdiction exception to the general rule that the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for a writ of mandamus. The petitioners have an adequate remedy by way of appeal should they suffer an adverse judgment. Accordingly, we deny the petitions.
1160824-PETITION DENIED.
1160832-PETITION DENIED.
Stuart, C.J., and Bolin, Parker, Shaw, Main, and Wise, JJ., concur.
Sellers, J., recuses himself.

Before the trial court entered the January judgment, Wainwright had amended the complaint to add Stifel and Saban as defendants. Wainwright alleged that Stifel had aided and abetted the Holbrooks and the non-Holbrook directors with the allegedly fraudulent merger but did not set forth any allegations against Saban. Stifel and Saban each filed motions to dismiss, and the January judgment determined that Stifel and Saban were also entitled to a judgment as a matter of law on Wainwright's claims. Thus, each of Wainwright's claims was disposed of as to all defendants.

Judge Green did not identify, either in the May order or at the hearing on Wainwright's postjudgment motion, the "manifest error of law" in the January judgment.

The May order appears to have reinstated all of Wainwright's claims, including the claims against Stifel and Saban. See note 1, supra. However, neither Stifel nor Saban has petitioned this Court for relief from the May order, although they filed an "Answer and Brief of Respondents" in case no. 1160824. See Rule 21(b), Ala. R. App. P.

The petitioners also cite Ex parte Ingalls Shipbuilding Corp., 32 Ala. App. 609, 28 So.2d 808 (1947), in support of their argument. However, Ingalls Shipbuilding involved mandamus review of an order vacating a worker's compensation settlement agreement that had been approved by a circuit court pursuant to Ala. Code 1940, Tit. 26, § 278 (now § 25-5-56, Ala. Code 1975 ). Nothing in Ingalls Shipbuilding provides that a release moots post-release claims or otherwise implicates a trial court's subject-matter jurisdiction.

To be clear, we are not suggesting that the petitioners waived the defense of release. We merely note that the defense is waivable in further support of the proposition that the defense does not implicate a trial court's subject-matter jurisdiction.