MURDOCK, Justice.
Francis Price Crosslin appeals from a judgment of dismissal by the Madison Circuit Court in his medical-malpractice action against the Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital (“Huntsville Hospital”) and Thomas J. Calvert, M.D. We reverse.

I. Facts and Procedural History

On February 23, 2002, Crosslin presented himself at the emergency room at Huntsville Hospital complaining of nausea, dizziness, and weakness. Dr. Calvert evaluated Crosslin and ordered a CT scan of Crosslin’s head, an electrocardiogram, a chest X-ray, and a blood count. The CT scan was performed at Huntsville Hospital later the same day. Immediately following the CT scan, a radiologist reviewed the images produced by the scan and issued a preliminary radiology report. This report indicated that Crosslin had a tumor on his pituitary gland. Later in the day, Dr. Calvert spoke with Crosslin concerning his condition, but he failed to inform him of the findings of the preliminary radiology report indicating that he had a pituitary tumor. There is no allegation that the symptoms from which Crosslin suffered on February 23, 2002, were related to the existence of the pituitary tumor. Thereafter, Crosslin was discharged from Huntsville Hospital.
On September 1, 2005, Crosslin presented himself at Huntsville Hospital complaining of a loss of vision in his left eye and decreased vision in his right eye. A CT scan of Crosslin’s head again indicated the presence of the pituitary tumor that had been identified by means of the previously performed CT scan. It was on this date, according to Crosslin, that he first learned of the pituitary tumor. He alleges that he was unaware before this date of any facts that would have reasonably led to the discovery of the tumor.
On September 3, 2005, surgery was performed on Crosslin to remove the tumor. Since the time of the surgery, Crosslin’s vision has not improved, and he presently suffers from blindness and/or severely limited vision in both eyes.
On February 24, 2006, Crosslin filed the present medical-malpractice action against Huntsville Hospital and Dr. Calvert. He alleged that Huntsville Hospital and Dr. Calvert were negligent and wanton by failing to inform him of the existence of the pituitary tumor that was identified by the 2002 CT scan. He alleged that, as a direct and proximate result of Huntsville Hospital’s and Dr. Calvert’s negligence and wantonness, he suffered severe bodily injury, including blindness or severely limited vision in both eyes. He also included allegations of negligence and wantonness against numerous fictitiously named defendants.
On March 16, 2006, Huntsville Hospital and Dr. Calvert filed a motion to dismiss pursuant to Rule 12(b)(6), Ala. R. Civ. P. On March 29, 2006, they filed a brief in *1195 support of their motion. In their brief, Huntsville Hospital and Dr. Calvert argued:
“The alleged breach of the standard of care in this case was a failure to inform Mr. Crosslin of the presence of a pituitary tumor on February 23, 2002. If the defendants breached the standard of care and caused damages as Crosslin claims, Crosslin would have been damaged on the same date as the alleged negligence, because he was already suffering from the tumor.”
Because Crosslin did not file his complaint until four years and one day after February 23, 2002, they argued, Crosslin’s action was barred by § 6-5-482(a), Ala.Code 1975, a part of the Alabama Medical Liability Act, Ala.Code 1975, §§ 6-5-480 to -488 (“the AMLA”).
On May 18, 2006, Crosslin amended his complaint to allege that he suffered bodily injury after February 24, 2002, as a direct and proximate result of Huntsville Hospital’s and Dr. Calvert’s alleged negligence and wantonness. On that same day, Crosslin filed a response to Huntsville Hospital and Dr. Calvert’s motion to dismiss. He argued that his cause of action did not accrue until he suffered an injury, which, according to his amended complaint, allegedly happened after February 24, 2002. Thus, he argued, his complaint was not barred by § 6-5-482(a).
On June 14, 2006, the trial court granted Huntsville Hospital and Dr. Calvert’s motion to dismiss. In its order entering the judgment of dismissal in their favor, the trial court stated:
“All claims asserted against the Hospital and Dr. Calvert by the plaintiff, Francis Price Crosslin, are hereby DISMISSED, with prejudice, because the claims are barred by the statute of limitations contained in Ala.Code § 6-5-482 (1975). The allegations of [Crosslin’s] own complaint demonstrate that the claims were filed more than four years after the date on which the cause of action accrued, which means the claims are barred as a matter of law.”
(Capitalization in original.) Crosslin filed a postjudgment motion seeking to have the trial court reconsider its dismissal, which the trial court denied. Crosslin appeals.

II. Standard of Review

In considering whether a complaint is sufficient to withstand a motion to dismiss under Rule 12(b)(6), Ala. R. Civ. P., a court “must accept the allegations of the complaint as true.” Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002) (emphasis omitted). “ ‘The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief.’” Smith v. National Sec. Ins. Co., 860 So.2d 343, 345 (Ala.2003) (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993)). In determining whether this is true, a court considers only whether the plaintiff may possibly prevail, not whether the plaintiff will ultimately prevail. Id. Put another way, “ ‘a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.’ ” Id. (emphasis added). Specifically, with regard to an affirmative defense like the one that is the basis of Huntsville Hospital and Dr. Calvert’s motion in the present case, the standard for granting a motion to dismiss is “ “whether the existence of the affirmative defense appears clearly on the face of the pleading.’ ” Jones v. Alfa Mut. Ins. Co., 875 So.2d 1189, 1193 (Ala.2003) (addressing the affir *1196 mative defense of the statute of limitations) (quoting Braggs v. Jim Skinner Ford, Inc., 396 So.2d 1055, 1058 (Ala.1981)).

III. Analysis

Crosslin points out that his amended complaint alleges that he was injured sometime after February 24, 2002, as a result of Huntsville Hospital’s and Dr. Calvert’s alleged failure to inform him of the existence of the pituitary tumor discovered by the CT scan taken on February 23, 2002. Thus, he argues, his complaint is not inconsistent with his ultimately proving a set of facts under which his claim would not be barred, i.e., that his complaint was filed within four years of the date on which his cause of action accrued.
Section 6-5-482(a), Ala.Code 1975, provides, in pertinent part:
“(a) All actions against physicians, surgeons, dentists, medical institutions, or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act .... ”
The parties do not dispute that the present action is governed by the AMLA. The parties likewise do not dispute that, under the allegations of the complaint, Crosslin is entitled to the benefit of the six-month discovery rule contained in § 6-5-482(a), and, thus, that his complaint alone does not, on its face, provide a basis for determining that his claims are barred by the two-year statute of limitations. The only question before this Court is whether the trial court erred when it found that the affirmative defense that Crosslin’s action is barred by the above-quoted four-year limitation “appears clearly on the face” of Crosslin’s complaint.
This Court has held that the four-year period of repose in § 6-5-482(a) “is an ‘absolute bar to all medical malpractice claims which are brought more than four years after the cause of action accrues.’ ” Ex parte Sonnier, 707 So.2d 635, 637 (Ala.1997) (quoting Bowlin Horn v. Citizens Hosp., 425 So.2d 1065, 1070 (Ala.1982)).[1] “A cause of action ‘accrues’ under § 6-5-482 when the act complained of results in legal injury to the plaintiff.” Mobile Infirmary v. Delchamps, 642 So.2d 954, 958 (Ala.1994). “When the wrongful act or omission and the resulting legal injury do not occur simultaneously, the cause of action accrues and the limitations period of § 6-5-482 commences when the legal injury occurs.” Id.; see also Grabert v. Lightfoot, 571 So.2d 293, 294 (Ala.1990) (“ ‘The statutory limitations period does not begin to run until the cause of action accrues. ... A cause of action accrues when the act complained of results in injury to the plaintiff.’ ” (quoting Colburn v. Wilson, 570 So.2d 652, 654 (Ala.1990))); Ramey v. Guyton, 394 So.2d 2, 4 (Ala.1981) (noting that when the negligent act and the resultant harm do not coincide, the *1197 accrual date of a cause of action under the AMLA is the date of the latter).[2]
In the present case, Crosslin has alleged that Huntsville Hospital and Dr. Calvert failed to inform him that he had a tumor on his pituitary gland on February 23, 2002. Crosslin has alleged that, as a result of the failure of Huntsville Hospital and Dr. Calvert to inform him of the existence of the pituitary tumor, he later suffered vision loss in both of his eyes. Thus, it appears that the legal injury Crosslin is alleging is that, because Huntsville Hospital and Dr. Calvert did not inform him of the existence of the pituitary tumor when it was discovered on February 23, 2002, he did not have the condition remedied before the tumor worsened and other physical injuries were caused by it.[3]
The allegations of the complaint, if taken as true, do not foreclose the possibility of Crosslin’s proving a set of facts that would entitle him to relief. For example, the evidence might show that the tumor was not in a growth phase when Dr. Calvert first diagnosed it on February 23, 2002, and therefore that the tumor did not worsen on that date.[4] Nor do the allegations of the complaint foreclose the possibility of proof that, even if the tumor did worsen on February 23, 2002, a disclosure of the presence of the tumor to Crosslin on February 23, 2002, would likely not have resulted in surgery on that same day so as to halt whatever worsening of his condition otherwise would have occurred between that day and the following day, February 24, 2002. Indeed, even after the tumor *1198 was discovered in a much advanced state several years later, surgery to remove it was not scheduled until two days after its discovery. In other words, the complaint does not, on its face, establish that Huntsville Hospital’s and Dr. Calvert’s failure to inform Crosslin of the tumor on February 23, 2002, resulted in any actual injury to Crosslin before February 24, 2002, the first day of the four-year period in question.
Relying on Grabert v. Lightfoot, supra, and Tobiassen v. Sawyer) 904 So.2d 258 (Ala.2004), Huntsville Hospital and Dr. Calvert argue that Crosslin necessarily sustained a legal injury on February 23, 2002, the date they allegedly failed to inform him of the existence of the pituitary tumor, and that, therefore, his action is time-barred under § 6-5-482(a). Grabert and Tobiassen, however, are distinguishable because in those cases the act of alleged medical malpractice immediately caused an identifiable injury to the complaining party and that injury fell outside the applicable time period, whereas, in the present case, Crosslin’s complaint does not foreclose his ability to prove that the injury caused by Huntsville Hospital’s and Dr. Calvert’s alleged malpractice did not occur until some time after the actual act of malpractice and therefore within the applicable time period.
In Grabert, the plaintiff was diagnosed with a hernia and underwent surgery for the purpose of repairing it. During that surgery, however, the surgeon failed to locate and repair the hernia. After a second surgery to repair the hernia left the plaintiff impotent, he sued the first surgeon because of that surgeon’s failure to' remedy the hernia during the first surgery. We held that the plaintiffs cause of action for medical malpractice accrued on the date of the first surgery because it was immediately after the first, unsuccessful operation that the plaintiff was entitled to maintain an action against the surgeon. Grabert, 571 So.2d at 294. Because of the alleged negligence of the first surgeon, the plaintiff had “suffered” a surgery that availed him nothing.[5]
Unlike the malpractice at issue in Gra-beri, Dr. Calvert’s alleged failure to inform Crosslin of the existence of the pituitary tumor did not, in and of itself, cause Cross-lin any actual injury. As explained above, Crosslin may be able to prove a set of facts establishing that he suffered no actual injury until within the applicable four-year period at issue. Thus, our holding in Gra-bert does not compel a finding in this case that Crosslin’s injury arose at the time of Huntsville Hospital’s and Dr. Calvert’s alleged negligent or wanton act or omission.
Huntsville Hospital and Dr. Calvert’s reliance on Tobiassen is likewise misplaced. In that case, the plaintiff presented himself for treatment at the emergency room of a hospital, suffering from the following symptoms as a result of a stroke: “ ‘severe headache, impaired balance, numbness to only one side of the body, and tingling on only one side of the body.’ ” 904 So.2d at 259. As the opinion notes, the doctor who treated the plaintiff in the emergency room on that day failed to discover the reason for the plaintiffs symptoms and sent him home “ hvith no treatment for the stroke.’ ” 904 So.2d at 261 n. 2 and accompanying text. The plaintiff, continuing to suffer symptoms from the stroke, returned to the emergency room on the following day, at which time he was admitted to the hospital; an additional three days passed *1199 before he was told that he had suffered a stroke.
Two years and four days after he had first been treated at the emergency room, the plaintiff sued the physician who had treated him at the emergency room and the hospital at which the emergency room was located. The plaintiff alleged that the physician and hospital had negligently failed to diagnose and treat the stroke the plaintiff had suffered. The physician moved for a judgment on the pleadings, and the hospital moved for a summary judgment, both arguing that the plaintiffs claim was barred by the two-year statute of limitations on medical-malpractice claims. After the trial court denied the motions, this Court granted permission to appeal. Reversing the trial court’s order denying the physician’s and the hospital’s motions and rendering a judgment for both defendants, this Court held that the plaintiffs cause of action accrued on his first visit to the emergency room when the defendants failed to diagnose and treat his stroke. Tobiassen, 904 So.2d at 261.
Our holding in Tobiassen was fully justified under the facts of that case. The plaintiffs injury from the defendants’ failure to diagnose and treat the plaintiffs stroke was immediate.
In the present case, however, Crosslin has not alleged when he was harmed as a result of the tumor remaining in his body longer than it would have had Huntsville Hospital and Dr. Calvert immediately informed him of its presence. The complaint alleges only that injury occurred “after February ¾⅜ 2002.” The allegations in Crosslin’s complaint thus stand in contrast to the circumstance presented in To-biassen, where the failure to diagnose and treat the stroke caused the plaintiff to suffer an immediate legal injury.

IV. Conclusion

In the present case, it does not “ ‘appear[ ] beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief.’ ” Smith, 860 So.2d at 345 (quoting Nance, 622 So.2d at 299). Specifically, the allegations of Crosslin’s complaint, if true, would not prevent Crosslin from proving a set of facts establishing that he first suffered actual injury within the four-year period immediately preceding the filing of his complaint. Consequently, the trial court was incorrect in concluding that Crosslin’s action was due to be dismissed under Rule 12(b)(6). We therefore reverse the trial court’s judgment and remand the cause for further proceedings.
REVERSED AND REMANDED.
COBB, C.J., and STUART, J., concur.
LYONS and BOLIN, JJ., concur in part and concur in the result.

. Consistent with the cases cited, in both the trial court and in this Court both parties have framed the dispositive issue as when Cross-lin's cause of action accrued. Our review is limited accordingly.

.We note that the Grabert Court also quoted Street v. City of Anniston, 381 So.2d 26 (Ala.1980), for the proposition that " ‘in malpractice actions, legal injury occurs at the time of the negligent act or omission, whether or not the injury is or could be discovered within the statutory period.’ " Grabert, 571 So.2d at 294 (quoting Street, 381 So.2d at 31). In making this statement, the Court was focused on a different issue than the one before this Court in the present case. In contrast to the present case, the focus of this statement was the issue of discovery of an injury and, more specifically, whether a failure to discover an injury postpones the accrual of a cause of action based on the injury. (The six-month discovery provision in § 6-5-482(a) was not applicable in either Grabert or Street.) The quoted passage does not speak to the situation where there is a failure of the injury and the negligent act to occur simultaneously, but instead presupposes that the injury occurs immediately upon the taking place of the negligent act or omission. See Grabert (involving a negligently performed surgery and a resultant immediate physical injury to the plaintiff); Street, 381 So.2d at 31 (rejecting the plaintiff's effort to distinguish certain previous cases, and instead reconciling those cases with Street on the ground that they involved the occurrence of an injury "which resulted immediately upon the taking place of the negligent act or omission”). In several medical-malpractice cases decided after Street, this Court has held that a legal injury does not necessarily occur at the same time as the negligent act or omission causing the injury. See, e.g., Mobile Infirmary v. Delchamps, 642 So.2d at 958 (rejecting argument that there was no set of facts under which the plaintiff could recover and holding that there was a right to present evidence as to whether implants placed in the plaintiff’s jaw on December 5, 1985, did not result in "legal injury until December 10, 1991, or some other time within two years of the filing of [tine] complaint”); Colburn v. Wilson, 570 So.2d at 654 (to similar effect); and Ramey v. Guyton, 394 So.2d at 4-5 (to similar effect).

. Unlike other cases in the which the medical provider's negligence is the failure to treat an existing malady, see, e.g., Tobiassen v. Sawyer, 904 So.2d 258 (Ala.2004), and Grabert v. Lightfoot, supra, discussed infra, the medical providers' alleged failure here, because of its unique nature, is not, in and of itself, alleged to have immediately caused an actual injury to Crosslin.

. For all that appears from the face of the complaint, the tumor may not have grown or otherwise worsened until the passage of a substantial amount of time following February 23, 2002.

. As this Court stated: "[I]t is clear that Gra-bert was damaged at the time of the first operation ...; he had a hernia and Dr. Light-foot failed to find or to remedy that condition.” Grabert, 571 So.2d at 294.