BOLIN, Justice.
George E. Cutler appeals from a judgment of the Jefferson Circuit Court dismissing his medical-malpractice action against the University of Alabama Health Services Foundation, P.C. (“the University”), and Paul G. Matz, M.D. We affirm.

I. Facts and Procedural History

On October 14, 2015, Cutler filed a medical-malpractice action against the University and Dr. Matz, a neurologist and employee of the University (hereinafter collectively referred to as “the defendants”). The gravamen of Cutler’s complaint is that the defendants had been negligent and wanton in failing to inform him of a two-centimeter tumor/lesion in the right frontal region of his brain that was discovered by a magnetic resonance imaging (“MRI”) scan of his brain taken on June 28, 2005; rather, he was told at that time that the tumorfiesion was a bruise. Cutler attached to the complaint a copy of the MRI report, which the trial court did not exclude. Because the MRI *1066 report is central to Cutler’s complaint and referred to in the complaint, there was no necessity to, and we will not, treat the defendants’ motion to dismiss as a motion for a summary judgment. See Donoghue v. American Nat’l Ins. Co., 838 So.2d 1032 (Ala.2002) (noting that, if defendant’s exhibit is central to and referred to in the complaint, its consideration does not convert a motion to dismiss into a motion for a summary judgment). The following facts concerning the alleged malpractice are taken from the complaint:
“1. On or about ... June 27, 2005, [Cutler] was injured in a motorcycle accident when he was thrown from a motorcycle and hit the back of his head on the ground. [Cutler] was seen at the Northeast Regional Medical Center in Anniston, Alabama for his injury and his history of having lost consciousness for 5 minutes. A CT [computerized tomography scan] was performed of his head which showed a low density zone in the medial right frontal lobe and the recommendation was made that he should have [a] follow-up MRI and neurological consultation. [Cutler] was transferred to [the University at Alabama in Birmingham (‘UAB’) Hospital], for this further evaluation and consultation on his head injury.
“2. On June 28, 2005, [Cutler] was transferred to UAB Hospital and was seen in the Emergency Room Department for evaluation of his head injury.... [T]he neurosurgeon consulting on [Cutler] was Paul G. Matz, M.D., an employee of Defendant, University of Alabama Health Services Foundation, P.C. [Cutler] was informed that he simply had a bruise on his brain and was discharged on the same day, June 28, 2005. No instructions of concern were given to [Cutler] for the need of further testing or treatment. However, ... [Cutler] in fact had a tumor/lesion that was described in the records as a ‘right frontal parafalcine hypodensity’ and that ‘Neurosurgery [was] to contact patient.’ The records further state that ‘the appearance of this lesion was atypical for a contusion.’ [Cutler] was never informed of this lesion/tumor and, instead was told it was a bruise. ...
“3. Throughout the following years, [Cutler] went without any information or disclosure of the finding of this lesion/tumor. [Cutler] had no contact from the Defendants regarding any such finding or the need for further testing or treatment. He was completely ignorant of this concern and had been told it was simply a bruise. Meanwhile, it continued to grow in his brain without disclosure or information. What was known to Defendants as a concern was allowed to continue to grow and become malignant without disclosure or any information to [Cutler]. [Cutler] was completely unaware of this developing process and was adversely affected by this lack of disclosure or information and was totally unaware of any concerns or signs of this process so that his cause of action had not legally accrued, despite the adverse beginning of the growth process within the 4 years following June 28, 2005.
“4. On February 11, 2015, [Cutler] was involved in a single vehicle incident where witnesses stated that his pick-up truck was failing to stay in his lane and that he appeared to be having medical issues when he was seen leaning to his right in the truck he was driving before he left the roadway and rolled over. [Cutler] was seen by Dr. Cumberbatch of Georgia where it was determined he had likely suffered a seizure while driving because of a large right frontal lesion in his brain. It was determined that this was the same lesion that was *1067 seen by Defendants on June 28, 2005, by MRI but that it had grown much larger in the interim without signs and symptoms until this fateful seizure while driving on February 11, 2015. The tumor had been growing and becoming malignant while he was left unaware of its presence and culminated in legal and medical injury to him on February 11, 2015.
“5. [Cutler] avers that Defendants ... negligently failed to disclose to [him] on June 28, 2005, that testing showed he had a lesion/tumor in his right front temporal area of the brain that was not a contusion. Instead, [Cutler] was negligently informed that he had suffered a bruise to his brain. Defendants negligently failed to make this disclosure to [Cutler] and negligently failed to follow up on this concerning finding and failed to give any instructions to [Cutler] to have any further follow-up and/or treatment. Defendants negligently failed to have neurosurgery contact [Cutler] with these concerns and findings.... As a proximate consequence, thereof, [Cutler] was left ignorant of this tumor/lesion; the tumor/lesion continued to grow and become malignant during this period of ignorance without any demonstrable signs or symptoms to his detriment; the process was started within the two years after this testing on June 28, 2005, but did not accrue into a legal injury until he suffered a seizure and automobile accident as set forth above; the same tumor/lesion that was evident to Defendants on June 28, 2005, greiv and became malignant causing legal injury to [Cutler] and creating this cause of action; [Cutler] has required and undergone surgical resection of this now large tumor which has been diagnosed in a late fashion as Grade II Astrocytoma; he has required medical treatment and has been caused to suffer severe physical pain and mental anguish; and he has been permanently injured.
“6. [Cutler] further avers that Defendants fraudulently concealed the existence of the tumor/lesion described above from [Cutler]. The Defendants had a duty to disclose this information to [Cutler] and such disclosure was material to [Cutler’s] health and he relied upon and trusted Defendants to his detriment. As a proximate cause thereof, [Cutler] was injured and damaged as set forth in Paragraph 5 above.[1]
“7. [Cutler] further avers that Defendants wantonly failed to advise [Cutler] of the tumor/lesion referred to in Paragraph 5 above in reckless disregard of the serious concerns shown on the MRI referred to above. Defendants wantonly failed in their duty to advise [Cutler] of this finding and failed to contact him to follow up on their own records as indicated they would. As a proximate consequence thereof, [Cutler] was injured and damaged as set forth above.”
(Emphasis added.)
On November 19, 2015, the defendants moved the trial court to dismiss the complaint against them pursuant to Rule 12(b)(6), Ala. R. Civ. P., arguing that the complaint alleged facts that demonstrated a manifest, legal injury and the accrual of Cutler’s cause of action within the four-year period of repose set forth in § 6-5-482(a), Ala.Code 1975. Section 6-5-482(a) provides:
“(a) All actions against physicians, surgeons, dentists, medical institutions, *1068 or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act; except, that an error, mistake, act, omission, or failure to cure giving rise to a claim which occurred before September 23, 1975, shall not in any event be barred until the expiration of one year from such date.”
(Emphasis added.) On January 11, 2016, following a hearing, the trial court entered a judgment dismissing the malpractice action against the defendants, concluding that it was barred by the four-year period of repose set forth in § 6-5-482(a). Cutler appeals.

II, Standard of Review

This Court has set forth the standard of review that must be applied in reviewing a dismissal pursuant to Rule 12(b)(6), Ala. R. Civ. P.:
“On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.”
Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993) (citations omitted).

III. Discussion

The alleged medical malpractice in this case occurred on June 28, 2005, when the defendants failed to inform Cutler of the presence of a two-centimeter tumor/lesion in the right frontal region of his brain. Cutler filed his complaint against the defendants on October 14, 2015—more than 10 years after the alleged malpractice occurred. Cutler maintains that, although the alleged malpractice occurred on June 28, 2005, his cause of action did not accrue until February 11, 2015, when, he says, he first suffered a legal injury—the seizure requiring him to undergo a surgical resection of the tumor/lesion, which was ultimately diagnosed as grade II astrocytoma. Cutler thus argues that because his cause of action did not accrue until February 11, 2015, his complaint filed on October 14, 2015, was timely. In other words, Cutler maintains that when the alleged medical malpractice and the resulting injury do not occur simultaneously, the cause of action accrues and the limitations period of § 6-5-482 begins to run when the legal injury occurs. See Crosslin v. Health Care Auth. of Huntsville, 5 So.3d 1193, 1196 (Ala.2008)(stating that “ ‘[w]hen the wrongful act or omission and the resulting legal injury do not occur simultaneously, the cause of action accrues and the limitations period of § 6-5-482 commences when the legal injury occurs’ ” (quoting Mobile Infirmary v. Delchamps, 642 So.2d 954, 958 (Ala.1994))); see also Ramey v. Guyton, 394 So.2d 2, 4 (Ala.1981)(stating that when the negligent act and the resultant *1069 injury do not coincide, “the accrual date of the cause [of action] is delayed to the date when the injury occurred”).
The trial court noted in its judgment of dismissal that the facts of Cutler’s case were “remarkably similar” to the facts of Crosslin, supra. In Crosslin, the plaintiff presented at the emergency room at Huntsville Hospital on February 23, 2002, complaining of nausea, dizziness, and weakness. The physician evaluated the plaintiff and ordered diagnostic tests. A radiologist reviewed the images produced by a CT scan and issued a preliminary radiology report indicating the presence of a tumor on the plaintiffs pituitary gland. Subsequently, the physician spoke with the plaintiff concerning his condition but failed to inform him of the findings of the preliminary radiology report indicating the presence of a pituitary tumor. There was no allegation that the symptoms from which the plaintiff suffered on February 23, 2002, were related to the pituitary tumor. The plaintiff was discharged from Huntsville Hospital.
On September 1, 2005, the plaintiff returned to Huntsville Hospital complaining of a loss of vision in his left eye and decreased vision in his right eye. A CT scan of the plaintiffs head indicated the presence of the pituitary tumor that had been previously identified. It was on this date that the plaintiff first learned of the pituitary tumor, and he alleges that he was unaware before this date of any facts that would have reasonably led to the discovery of the tumor.
On September 3, 2005, surgery was performed to remove the tumor. Following the surgery, the plaintiffs vision did not improve, and he suffered from blindness and/or severely limited vision in both eyes.
On February 24, 2006, the plaintiff sued the physician and Huntsville Hospital asserting a medical-malpractice claim and alleging that Huntsville Hospital and the physician had been negligent and wanton by failing to inform him of the existence of the pituitary tumor following the CT scan in 2002 that identified the tumor. Huntsville Hospital and the physician moved to dismiss the claims against them pursuant to Rule 12(b)(6), Ala. R. Civ. P. Huntsville Hospital and the physician argued in the motion that the alleged breach of the standard of care in that case was a failure to inform the plaintiff of the presence of a pituitary tumor on February 23, 2002, and that, if Huntsville Hospital and the physician breached the standard of care and caused damage as the plaintiff claims, he would have been damaged on the same date the alleged negligence occurred, because he was already suffering from the tumor. Because the plaintiff did not file his complaint until four years and one day after February 23, 2002, Huntsville Hospital and the physician argued that the plaintiffs action was barred by the four-year period for repose set forth in § 6—5—482(a).
The plaintiff amended his complaint to allege that he suffered bodily injury after February 24, 2002, and argued in opposition to the motion to dismiss that his cause of action did not accrue until he suffered an injury, which, according to his amended complaint, allegedly happened after February 24, 2002. Thus, he argued, his complaint was not barred by § 6-5-482(a).
The trial court granted Huntsville Hospital and the physician’s motion to dismiss. In reversing the trial court’s order dismissing the plaintiffs action as untimely, this Court stated:
“This Court has held that the four-year period of repose in § 6-5-482(a) ‘is an “absolute bar to all medical malpractice claims which are brought more than four years after the cause of action accrues.”’ Ex parte Sonnier, 707 So.2d 635, 637 (Ala.1997) (quoting Bowlin *1070 Horn v. Citizens Hosp., 425 So.2d 1065, 1070 (Ala.1982)). ‘A cause of action “accrues” under § 6-5-482 when the act complained of results in legal injury to the plaintiff.’ Mobile Infirmary v. Delchamps, 642 So.2d 954, 958 (Ala.1994). ‘When the wrongful act or omission and the resulting legal injury do not occur simultaneously, the cause of action accrues and the limitations period of § 6-5-482 commences when the legal injury occurs.’ Id.; see also Grabert v. Lightfoot, 571 So.2d 293, 294 (Ala.1990) (‘ “The statutory limitations period does not begin to run until the cause of action accrues .... A cause of action accrues when the act complained of results in injury to the plaintiff.”’ (quoting Colburn v. Wilson, 570 So.2d 652, 654 (Ala. 1990))); Ramey v. Guyton, 394 So.2d 2, 4 (Ala.1980) (noting that when the negligent act and the resultant harm do not coincide, the accrual date of a cause of action under the [Alabama Medical Liability Act] is the date of the latter).
“In the present case, [the plaintiff] has alleged that Huntsville Hospital and [the physician] failed to inform him that he had a tumor on his pituitary gland on February 23, 2002. [The plaintiff] has alleged that, as a result of the failure of Huntsville Hospital and [the physician] to inform him of the existence of the pituitary tumor, he later suffered vision loss in both of his eyes. Thus, it appears that the legal injury [the plaintiff] is alleging is that, because Huntsville Hospital and [the physician] did not inform him of the existence of the pituitary tumor when it was discovered on February 23, 2002, he did not have the condition remedied before the tumor worsened and other physical injuries were caused by it.
“The allegations of the complaint, if taken as true, do not foreclose the possibility of [the plaintiffs] proving a set of facts that would entitle him to relief. For example, the evidence might show that the tumor was not in a growth phase when [the physician] first diagnosed it on February 23, 2002, and therefore that the tumor did not worsen on that date. Nor do the allegations of the complaint foreclose the possibility of proof that, even if the tumor did worsen on February 23, 2002, a disclosure of the presence of the tumor to [the plaintiff] on February 23, 2002, would likely not have resulted in surgery on that same day so as to halt whatever worsening of his condition otherwise would have occurred between that day and the following day, February 24, 2002. Indeed, even after the tumor was discovered in a much advanced state several years later, surgery to remove it was not scheduled until two days after its discoveiy. In other words, the complaint does not, on its face, establish that Huntsville Hospital’s and [the physician’s] failure to inform [the plaintiff] of the tumor on February 23, 2002, resulted in any actual injury to [the plaintiff] before February 21, 2002, the first day of the four-year period in question.
[[Image here]]
“... [The plaintiff] has not alleged when he was harmed as a result of the tumor remaining in his body longer than it would have had Huntsville Hospital and [the physician] immediately informed him of its presence. The complaint alleges only that injury occurred ‘after February 24, 2002.’ ”
Crosslin, 5 So.3d at 1196-99 (footnotes omitted). Hence, in Crosslin, the complained-of negligent act—the failure to inform the patient of the presence of a tumor—did not immediately cause an identifiable legal injury insofar as the complained-of negligent act occurred on February 23, 2002, and the amended *1071 complaint alleged that the actual injury, i.e., the worsening of the tumor, occurred after February 24, 2002. This Court noted that the complaint did not, on its face, establish that the defendants’ failure to inform the plaintiff of the tumor on February 23, 2002, resulted in any actual injury to the plaintiff before February 24, 2002, the first day of the four-year period in question. Rather, this Court concluded that, although the complained-of negligent act occurred beyond the four-year period of repose in 6-5-482(a), the plaintiff may have been able to prove a set of facts indicating that the actual legal injury occurred within the four-year period of repose.
In this case, the trial court explained in its order dismissing Cutler’s medical-malpractice action that the primary difference between Crosslin and the instant case is that Crosslin alleged in his complaint only that his injury occurred at a point after February 24, 2002, and, thus, “Crosslin may [have been] able to prove a set of facts establishing that he suffered no actual injury until within the applicable four-year period at issue.” 5 So.3d at 1198. Cutler’s complaint, on the other hand, alleges that the tumor/lesion culminated in a legal injury on February 11, 2015, despite “an adverse beginning of the growth process within the four years following June 28, 2005.” (Emphasis added.) Based on this averment, the trial court concluded that, regardless of the date of the discovery of any injury, the statute of repose would have begun to run at the latest by June 28, 2009, and would have expired at the latest by June 28,2013. We agree.
It is well settled that in medical-malpractice actions the legal injury occurs at the time of the negligent act or omission, regardless of whether the injury is or could be discovered within the statutory period. See, e.g., Ex parte Hodge, 153 So.3d 734 (Ala.2014)(holding that patient suffered actionable legal injury, and period of repose began to run, when physician left hemostat clamp in patient’s body, regardless of when or to what extent the complications from the negligent act would be discovered); Ex parte Sonnier, 707 So.2d 635 (Ala.1997)(holding that legal injury resulting from allegedly unnecessary performance of hysterectomy occurred on date hysterectomy was performed); Mobile Infirmary v. Delchamps, 642 So.2d 954, 958 (Ala.1994)(noting that “[w]hether [Delchamps’s] claims are barred by § 6-5-482 depends on when in fact she first suffered the alleged legal injury, i.e., bone degeneration in her jaw. Delchamps’s complaint, as presently amended, alleges the date of which the implant was placed in her jaw and the date on which she first became aware of the alleged injury to her jaw. The key fact not alleged is the time when Delchamps first suffered the alleged bone degeneration.”); Grabert v. Lightfoot, 571 So.2d 293 (Ala.1990)(holding that statute of limitations began to run on patient’s medical-malpractice action against surgeon after first operation, during which surgeon failed to locate hernia, even though full extent of patient’s injury was not known until second operation); and Jones v. McDonald, 631 So.2d 869 (Ala.1993)(holding that plaintiffs cause of action accrued on the date the ophthalmologist performed the initial surgery and left the gauze at the surgical site).
The key fact in this case is the time at which Cutler first suffered a legal injury caused by the defendants’ failure to inform him of the tumor/lesion appearing on the June 28, 2005, MRI. In Crosslin, this Court stated that “it appears that the legal injury [the plaintiff] is alleging is that, because [the defendants] did not inform him of the existence of the pituitary tumor *1072 when it was discovered ..., he did not have the condition remedied before the tumor worsened and other physical injuries were caused by it.” 5 So.3d at 1197. Likewise in this case, it appears that the legal injury Cutler is alleging is that, because the defendants did not inform him of the existence of the tumor/lesion when it was discovered on the MRI, he did not have the condition remedied before the tumor/lesion began its adverse growth process and became malignant. Unlike the fact scenario in Crosslin—in which the complaint did not on its face establish that the defendants’ failure to inform the plaintiff of the tumor on February 23, 2002, resulted in any actual injury to the plaintiff before February 24, 2002, the first day of the four-year period of repose—Cutler specifically alleges that his tumor/lesion began its adverse growth process and/or became malignant “within the 4 years following June 28, 2005,” and/or that “the process was started within the two years after [the MRI] on June 28, 2005.” Accordingly, as noted by the trial court, the four-year statute of repose would have begun to run at the latest by June 28, 2009, despite the fact that Cutler did not learn of the presence of the tumor/lesion until February 11, 2015.
Cutler argues on appeal that he never pleaded when the tumor grew or became malignant; rather, he pleaded only that the “process” of growth and malignancy occurred during the interim between June 28, 2005, and February 11, 2015, and that the defendants did not cause this process—rather, this process is a natural process that does not imply or prove injury. Cutler cites Griffin v. Unocal Corp., 990 So.2d 291, 293 (Ala.2008), for the proposition that “ ‘a cause of action accrues only when there has occurred a manifest, present injury.’” (Quoting Cline v. Ashland, Inc., 970 So.2d 755, 773 (Ala.2007)(Harwood, J., dissenting).) Thus, he contends that his cause of action accrued and the period of repose in § 6-5-482 commenced when, and only when, his injury was sustained. However, even if the “manifest, present injury” rule in Griffin, applicable to toxic-substance-exposure cases, is applicable to medical-malpractice actions, which we need not address, Cutler fails to acknowledge that, in Griffin, this Court, in overruling Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979), adopted Justice Harwood’s dissent in Cline, 970 So.2d at 761, in which Justice Harwood elaborated on manifest, present injury as follows:
“The proper construction of the term ‘accrued’ in § 6-2-30(a)[, commencement of actions for injuries resulting from exposure to asbestos,] in the context of toxic-substance-exposure cases should honor the rule that a cause of action accrues only when there has occurred a manifest, present injury. I understand ‘manifest’ in this context to mean an injury manifested by observable signs or symptoms or the existence of which is medically identifiable. ‘Manifest ’ in this sense does not mean that the injured person must be personally aware of the injury or must know its cause or origin. All that is required is that there be in fact a physical injury manifested, even if the injured person is ignorant of it for some period after its development. This approach is mandated by the rule stated as early as Kelly v. Shropshire, 199 Ala. 602, 605, 75 So. 291, 292 (1917), and as late as Gilmore v. M & B Realty Co., LLC, 895 So.2d 200, 208 (Ala.2004), and on innumerable occasions in between, that ‘plaintiffs ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, [does not] postpone the running of the statute [of limitations] until the tort or injury is discovered.’ ...”
*1073 970 So.2d at 773 (Harwood, J., dissent-ing)(emphasis added).
In this case, it is clear from the allegations of his complaint that Cutler suffered a legal injury “within the [four] years following [the] June 28, 2005,” MRI, because it is within that time that Cutler alleges the tumor/lesion began its growth process and/or became malignant. Thus, Cutler’s argument that his “legal injury” could not have manifested itself until he actually suffered harm is unavailing. See Garrett v. Raytheon Co., 368 So.2d at 518 (noting that the statute of limitations in a medical-malpractice action begins to run regardless of whether the full amount of damage is apparent at the time of the first legal injury).

IV. Conclusion

After reviewing the allegations of Cutler’s complaint in light of the applicable standard of review, we conclude that Cutler would be unable to prove any set of facts to support his claim that his legal injury occurred beyond the expiration of the four-year period of repose. Cutler has alleged on the face of complaint specific facts demonstrating that his legal injury occurred within the four-year period of repose, which began to run on June 28, 2005. Because Cutler filed his complaint well beyond the four-year period of repose in § 6-5-482(a), the trial court did not err in dismissing the medical-malpractice action against the defendants.
AFFIRMED.
SHAW and MAIN, JJ., concur.
MURDOCK, J., concurs specially.
BRYAN, J., concurs in the result.

. We note that Cutler makes no argument in his brief concerning the allegations in this paragraph 6 of his complaint regarding fraud; rather, his arguments concerning the alleged malpractice are couched in terms of negligence.